UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO. _____

MUNICH RE UNDERWRITING LIMITED,
a foreign corporation,

      Plaintiff,

vs.

MARKEL INSURANCE COMPANY
a foreign corporation,

      Defendant
_____/

## COMPLAINT

**COMES NOW** Plaintiff, MUNICH RE UNDERWRITING LIMITED ("MUNICH"), by and through undersigned counsel, and pursuant to the Federal Rules of Civil Procedure files this Complaint against Defendant MARKEL INSURANCE COMPANY ("MARKEL") and states as follows:

## GENERAL ALLEGATIONS

1. This is a claim for breach of an insurance contract and subrogation for money paid by MUNICH for loss and physical damage to the 2005 built 46 foot fiberglass Fountaine Pajot catamaran *M/Y WHATCHAGONNADO* ("vessel") and is brought pursuant to a Judgment ("Judgment") in the amount of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000.00) in favor of MUNICH against JAMES F. CASH ("CASH") in the litigation brought in the United States District Court for the

Southern District of Florida styled *MUNICH RE UNDERWRITING LIMITED v. JAMES F. CASH, an individual, and MARINA SAILING, INC.*, CASE NO. 08-61990-CIV-ZLOCH/SNOW ("CASH litigation"). Please find a copy of the Judgment appended hereto as **Exhibit** "**A**".

2. MUNICH also obtained a Judgment in the amount of Seventy One Thousand Thirty One Dollars and Seventy Five Cents (**$71,031.75**) with interest at .53% *per annum* against CASH and MARINA SAILING, INC. ("MARINA SAILING") in the CASH litigation. Please find a copy of the Judgment appended hereto as **Exhibit** "**B**".

3. At all material times, coverage existed for CASH and MARINA SAILING for the loss as more fully described herein under the Commercial General Liability Policy of Insurance No. 3602AH273016-2 ("Policy") issued by Defendant MARKEL to AMERICAN SAILING ASSOCIATION ("ASA"). Please find a copy of the Policy appended hereto as **Exhibit** "**C**".

4. This subrogation action is within the admiralty and maritime jurisdiction of the United States District Court and is brought within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Rules governing Admiralty and Maritime Claims arising out of two separate incidents occurring in the Bahamas in May of 2007.

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1333.

6. This action is also within the Court's diversity subject matter jurisdiction pursuant to 28 USC §1332, in that all parties are diverse and the amount in controversy exceeds $75,000.00 exclusive of fees, costs and interest.

HOUCK ANDERSON, ATTORNEYS AT LAW

7. MUNICH is a foreign corporation, with its principal place of business in London, England.

8. Upon information and belief MARKEL is a foreign corporation with a principle place of business at 4521 Highwoods Parkway, Glen Allen, Virginia.

9. This Court has jurisdiction over MARKEL, which has registered with the Chief Financial Officer of Florida's Department of Financial Services for service of process.

10. This Court also has jurisdiction over MARKEL pursuant to Florida's Long-Arm Statute (Fla. Stat. § 48.193), as MARKEL conducts business in the State of Florida.

11. This Court has jurisdiction over MARKEL pursuant to Florida's Long-Arm Statute (Fla. Stat. § 48.193), as MARKEL breached a contract to be performed in the State of Florida.

12. Venue in this Court is appropriate, as MARKEL breached a contract to be performed in the Southern District of Florida.

13. At all material times, MUNICH'S insured, STEVEN ROGERS ("ROGERS"), was the owner of *M/Y "WHATCHAGONNADO"*.

14. At all material times, CASH was an agent and/or employee and/or contractor of MARINA SAILING.

15. At all material times, CASH was an ASA certified sailing instructor and licensed captain of the vessel.

16. At all material times, MARINA SAILING was a member of the ASA.

17. Upon information and belief, MARINA SAILING paid a premium to MARKEL for insurance coverage to include CASH.

18. In early May 2007, the vessel was located in waters off the island of Tortola, British Virgin Islands.

19. ROGERS entered into an agreement with CASH whereby CASH, as an independent contractor, was to arrange for and execute the delivery of the vessel from Tortola, B.V.I. to Port Everglades, Florida prior to June 7, 2007, so that the vessel could then be placed aboard a heavy duty marine transporter for shipment to Ensenada, Mexico.

20. ROGERS also entered into an agreement with MARINA SAILING whereby MARINA SAILING, in exchange for monetary payment, organized ASA training classes for two students aboard the vessel and employed CASH, as a licensed ASA marine captain in active status, to provide instruction to these two students pursuing ASA certification.

21. On May 28, 2007, CASH was at the helm of the vessel, conducting instruction to the two students pursuing ASA certification, navigating near Stocking Island, proceeding toward Georgetown, Bahamas, when he, CASH, ran the vessel aground while attempting to find anchorage close to shore.

22. The grounding was factually and legally caused by the negligence of CASH.

23. As a result of CASH'S negligence, the vessel sustained extensive physical damage to its hull, requiring lay ups and repair once the vessel arrived at Port Everglades, Florida.

24. On May 31, 2007, CASH was again at the helm of the vessel, conducting instruction to the two students pursuing ASA certification, navigating in Nassau,

Bahamas, when he caused the vessel's mast to strike the bridge connecting Nassau with Paradise Island.

25. The mast strike was factually and legally caused by the negligence of CASH.

26. As a result of CASH'S negligence, the vessel's mast sustained extensive physical damage, requiring the installation of a replacement mast.

27. The vessel proceeded to Fort Lauderdale, Florida, where she arrived sometime in early June, 2007. She berthed at Harbour Towne Marina in Dania Beach, Florida.

28. On or about June 5, 2007, CASH placed MARKEL on notice of a claim under the Policy through the Atlanta, Georgia office of insurance broker ESIX. The following day insurance broker Brown and Brown confirmed to CASH that they had notified MARKEL of the claim. Please see a copy of June 6, 2007 e-mail message from Brown and Brown to CASH with copy to ASA appended hereto as **Exhibit "D"**.

29. Sometime shortly thereafter MARKEL appointed Crawford and Company to act on their behalf. On or about June 13, 2007, Crawford's senior marine surveyor Mr. Aldo Paino surveyed the vessel and recommended that the mast be removed and examined by professional riggers plus a metallurgist. Mr. Paino arranged to have Nance & Underwood Rigging and Sails of Fort Lauderdale ("Nance & Underwood") estimate repairs for the damaged and broken mast. On the same day Mr. Paino, in an e-mail to CASH, confirmed that the riggers' report was acceptable and referenced their invoice. He also recommended further examination of the mast to determine whether replacement was the more reasonable option. Please see the e-mail message

exchange among Mr. Paino, CASH and ROGERS appended hereto as composite **Exhibit "E"**.

30. On or around this time MARKEL, through Crawford, appointed Mr. David Miller as the claims adjuster on Defendant's behalf.

31. On June 15, 2007, Mr. Paino confirmed to ROGERS and CASH that MARKEL had agreed to pay for the removal and inspection of the mast by Nance & Underwood. The e-mail confirmation identified the MARKEL adjuster as Ms. Patty Melvin and was copied to Ms. Melvin and Mr. Miller. Please see June 15, 2007 e-mail message from Mr. Paino appended hereto as composite **Exhibit "F"**.

32. On June 15, 2007 Mr. Paino also confirmed to ROGERS that either he or a colleague would be available to attend the inspection of the mast when scheduled by Nance & Underwood. On the same day Mr. Paino asked CASH to identify all the navigation equipment onboard the vessel that was lost because of the mast striking the bridge and stated that he would obtain estimates for replacement. Please see June 15, 2007 e-mail message from Mr. Paino appended hereto as composite **Exhibit "G"**.

33. ROGERS remained in contact with Mr. Paino regarding the mast inspection and arranged to travel from California to Fort Lauderdale to inspect the yacht. Please see June 21, 2007 e-mail exchange appended hereto as **Exhibit "H"**.

34. On June 26, 2007, Mr. Paino sent ROGERS a list of items for repair titled "Cost of placing the boat in the same condition as before the accident". Mr. Paino specified various items under the categories: (i) replacement of the mast; (ii) repairs on board and (iii) electronics, with a fourth category "other expenses directly related to the repairs onboard" left blank with an invitation to discuss "what else could still be missing".

He also confirmed receiving an invoice for a new mast. Please see June 26, 2007 e-mail appended hereto as **Exhibit "I"**.

35. On June 28, 2007, in an e-mail titled "costs review" Mr. Paino confirmed to ROGERS that he had received an invoice from Nance & Underwood and it included some unidentified electronics work. Please see June 29, 2007 e-mail correspondence appended hereto as composite **Exhibit "J"**.

36. On June 29, 2007 in an e-mail with the subject line "Estimate E336" Mr. Paino asked ROGERS if he had obtained an estimate of the crane and berthing costs related to the contemplated repair. Paino stated that he had received a report from Nance & Underwood and that "I am currently completing mine". Later that day ROGERS advised Paino of the verbal estimate received for these items and Paino responded by confirming that he would work "based on those figures". Please see June 29, 2007 e-mail correspondence appended hereto as composite **Exhibit "K"**.

37. On July 2, 2007 Paino wrote to ROGERS stating that "from now on you can follow up your claim with David Miller" ("MILLER").

38. Upon information and belief sometime between June 15 and August 6, 2007, MARKEL through MILLER made an offer to ROGERS to settle his claim for the mast damage. ROGERS told MILLER that he wanted to obtain an independent survey of the damage before responding to the offer.

39. Upon information and belief shortly thereafter during an examination of the vessel while in the yard hull damage from the May 28, 2007 grounding was observed. This was the first time that ROGERS learned of the grounding. MILLER advised

ROGERS that because CASH had not reported this incident MARKEL would not cover him for either loss.

40. As a direct result of MARKEL'S wrongful decision to abruptly decline responsibility for CASH'S negligence and the resulting damage to *M/Y WHATCHAGONNADO* MUNICH, pursuant to its insurance Policy, paid ROGERS a total of SEVENTY ONE THOUSAND THIRTY ONE DOLLARS AND SEVENTY FIVE CENTS ($71,031.75), for repairs for damages resulting from the May 28, 2007 and May 31, 2007 incidents.

41. Therefore, because CASH and MARINA SAILING were insured for their negligence by MARKEL, and MUNICH'S liability and payment were the direct result of MARKEL'S wrongful refusal to pay the damage caused by their insured's negligence, MUNICH is entitled to judgment against MARKEL in the amount of THREE HUNDRED TWENTY-ONE THOUSAND THIRTY-ONE DOLLARS and 75/100 (**$321,031.75**).

### COUNT I – BREACH OF CONTRACT CLAIM

42. MUNICH re-alleges and incorporates the allegations of paragraphs 1 through 41 *supra* as if fully set forth herein.

43. The MARKEL Policy *proforma* contains, *inter alia*, the following relevant provisions with underlined emphasis supplied:

**COMMERCIAL GENERAL LIABILITY POLICY DECLARATIONS**

Named Insured and Mailing Address

AMERICAN SAILING ASSOCIATION

Policy Period: from 01/01/2007 until 01/01/2008

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

SECTION I COVERAGES

COVERAGE A.   BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.   **Insuring Agreement**

A.   <u>We will pay those sums that the insured becomes legally obligated to pay as damages because of</u> 'bodily injury' or '<u>property damage</u>' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.

2.   **Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(2)   A watercraft you do not own that is:
    (a)   Less than 26 feet long; and
    (b)   Not being used to carry persons or property for a charge

**j) Damage to Property**

"Property Damage" to:

(3)   Property loaned to you;
(4)   Personal property in the care, custody or control of the insured.

**SECTION V DEFINTIONS**

17. 'Property Damage' means:

a. Physical injury to tangible property …

**COMMON POLICY CONDITIONS**

C.
    **INSPECTIONS AND SURVEYS**

      1. We have the right to:
      a. Make inspections and surveys at any time;

44.    The MARKEL Policy contains, *inter alia*, the following relevant endorsements with underlined emphasis supplied:

**BOATS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description of Watercraft**:
<u>Any sailing craft while used for sailing instruction by an ASA certified School with an ASA Certified Instructor aboard</u>.

Additional Premium: <u>Included</u>

(If no entry above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. Exclusion g. of Coverage A (section I) does not apply to any watercraft shown in the Schedule owned or used by or rented to the insured.

2. WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

    **Commercial General Liability**
                  **CHANGES**
    In consideration of the premium charged, it is hereby understood and agreed that form CG0001, Commercial General Liability Coverage Form, is amended as follows:

    Section I, Coverages, 2. Exclusions, g. Aircraft, Auto or Watercraft, (2) A watercraft you do not own that is: (a) Less than 52 feet long in lieu of 26 feet long.

## LIMITATION OF COVERAGE TO DESIGNATED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description and Location of Operation:**

<u>Certified instructors</u> of the American Sailing Association,
But only <u>while instructing for a member academy or club</u>.

This insurance only applies to ... '<u>property damage</u>' ... arising out of <u>operations</u>   described in the Schedule.

45.     At all material times to this action MARKEL provided a Policy of commercial general liability insurance to the American Sailing Association, which is a binding and enforceable contract under the General Maritime Law of the United States and the laws of the State of Florida.

46.     The Policy covers property damage occurring to "Any sailing craft while used for sailing instruction by an ASA certified School with an ASA Certified Instructor aboard."  On May 28, 2007 and again on May 31, 2007 *M/Y "WHATCHAGONNADO"* suffered physical injury to her mast, hull, and other structures onboard while piloted by CASH, a certified ASA instructor, providing sailing instruction on behalf of MARINA SAILING, a member of the ASA.

47.     MARKEL should have paid for the stated losses suffered by the *M/Y "WHATCHAGONNADO"* and while initially indicating that it would respond to the claim, ultimately Defendant refused to do so, thereby breaching the contract of insurance.

48.   As a direct, foreseeable and proximate result of MARKEL'S breach of its obligations under the Policy Plaintiff has suffered and continues to suffer damages.

**WHEREFORE**, Plaintiff, MUNICH RE UNDERWRITING LIMITED demands judgment against Defendant MARKEL INSURANCE COMPANY for damages in the amount of THREE HUNDRED TWENTY-ONE THOUSAND THIRTY-ONE DOLLARS and 75/100 (**$321,031.75**), together with pre- and post judgment interest thereon, and for such other relief as this Court deems just and proper.

Dated: June 1, 2012

Respectfully submitted,

_____
ANDREW W. ANDERSON
Fla. Bar. No. 213144
HOUCK ANDERSON P.A.
*Counsel for MUNICH*
200 S. Biscayne Boulevard, Suite 300
Miami, Florida   33131-2332
(305) 372-9044 Telephone
(305) 372-5055 Facsimile
aanderson@houckanderson.com